IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00983-WYD-KLM

WELLMAN E. GIBSON,

    Plaintiff,

v.

ANNA MARIE CAMPBELL,
C. HOLST, AIC,
SHIRLEY STEINBECK,
MARSHALL GRIFFITH,
LT. STEINBECK, and
DOCTOR AASEN,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion to Dismiss Complaint** [Docket No. 85; Filed January 29, 2010] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for recommendation. The matter has been fully briefed and is ripe for resolution. The Court has considered the relevant Motion, Plaintiff's Response [Docket No. 102], Defendants' Reply [Docket No. 103][1] and the applicable case law and is sufficiently advised in the premises. For the reasons set forth below, I **RECOMMEND** that the Motion be **DENIED.**

---

[1] In addition, I note that Plaintiff filed at least two additional pleadings purporting to be surreplies [Docket Nos. 104 & 110]. Plaintiff was not given leave to file any surreplies, which are not contemplated by the Federal Rules of Civil Procedure. However, given Plaintiff's *pro se* status, to the extent that the surreplies are relevant and not frivolous, the Court considers them.

1

## I. Background

Plaintiff is a *pro se* inmate incarcerated in the Arkansas Valley Correctional Facility ("AVCF") of the Colorado Department of Corrections ("CDOC"). *Motion* [#85] at 1. Pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), Plaintiff raises three claims for relief in his operative Complaint relating to Defendants' alleged denial of Plaintiff's access to the prison's books on tape program. *Complaint* [#37] at 4-8. Specifically, Plaintiff contends that he suffers from a dexterity disability which prevents him from reading from books with pages and, therefore, the deprivation of his books on tape violates both statutory and constitutional law. *Id.* at 3-5.

Prior to the current litigation, Plaintiff was a claimant in the *Montez v. Owens* class action lawsuit, which adjudicated whether Plaintiff was mobility disabled as determined by a Special Master. *See Montez v. Owens*, No. 92-cv-00870-JLK-OES. In *Montez*, the Special Master initially found that Plaintiff "has a complex disability involving both his lower back and legs and also his cervical spine and the inability to use his hands." *2007 Final Order of Special Master* [#85-2] at 6 ("*Montez I*"). Upon reconsideration, however, the Special Master amended his findings (based on new video evidence of Plaintiff walking up and down stairs without difficulty) and concluded that Plaintiff "fails to meet the requirements to be mobility disabled." *2008 Amended Final Order of Special Master* [#85-3] at 6 ("*Montez II*").

After the Special Master's amended findings, Plaintiff filed the present lawsuit alleging that he has a dexterity disability and is entitled to certain accommodations. Initially, Plaintiff's case was dismissed as legally frivolous given its factual similarity to *Montez*. *Gibson v. Campbell*, 09-cv-00983, 2009 WL 1550192, at *2 (D. Colo. May 29, 2009)

2

(unpublished decision). On appeal, the Tenth Circuit reversed the dismissal. *Gibson v. Campbell*, 347 Fed. Appx. 409, 412 (10th Cir. Oct. 5, 2009) (unpublished decision). The Tenth Circuit found that Plaintiff's hand limitations were not necessary to the decision in *Montez II*. *Id.* at 411. Additionally, the Tenth Circuit noted that "on the limited appellate record now before us, principles of res judicata should not bar [Plaintiff's] current suit." *Id.* However, the Tenth Circuit qualified its decision by stating that its preliminary holding did not "preclude further evidence or argument on the issue of res judicata or issue preclusion." *Id.* at 412. Although not entirely clear, the present record before me appears identical to that which was available to the Tenth Circuit.

In the instant case, Plaintiff asserts three claims:

Claim One   Defendants refuse to abide by the ADA guidelines when conducting tests to determine if an inmate is disabled. *Complaint* [#37] at 6. In addition, Plaintiff alleges that a letter from Defendant Campbell implicates all Defendants in a conspiracy to prevent Plaintiff from participating in the prison's books on tape program. *Id.*

Claim Two   Defendants fail to acknowledge Plaintiff's dexterity disability which constitutes discrimination against Plaintiff pursuant to the ADA. *Id.* at 7. Specifically, Plaintiff contends that, despite his alleged disability, Defendant Assen rescinded his order that Plaintiff should receive books on tape as the result of a conspiracy with non-medically trained Defendants. *Id.*

Claim Three Defendants confiscated Plaintiff's religious books on tape in violation of his First Amendment rights. *Id.* at 8. Specifically, Plaintiff contends

3

that Defendant Lt. Steinbeck took Plaintiff's religious materials and contacted a group called "JBI" to prevent Plaintiff from receiving large print versions of the "Tankah" (Old Testament) in Hebrew. *Id.*

In their Motion, Defendants contend that Plaintiff fails to allege that Defendants Holst, Shirley Steinbeck[2] and Griffith personally participated in the alleged violations. *Motion* [#85] at 4. Additionally, Defendants argue that Plaintiff's claims are barred by collateral estoppel. *Id.* In the alternative, Defendants argue that Claims One and Two fail to state a claim for relief pursuant to the ADA. *Id.* at 11. Defendants do not address whether Plaintiff has stated a First Amendment violation in relation to Claim Three.

Plaintiff challenges all of Defendants' arguments. First, Plaintiff argues that a letter referenced in his Complaint provides an "affirmative link between all Defendants [sic] conduct and all the constitutional violations that occurred." *Response* [#102] at 1. Second, with regard to collateral estoppel, Plaintiff argues that the *Montez* hearings "did not deal with [the] upper mobility impairment" that is at issue in the instant case. *Id.* Third, Plaintiff maintains that several life activities including "lifting, reaching, sitting, standing, learning, reading, and writing" are impacted by Plaintiff's dexterity disability and thereby qualify Plaintiff as disabled pursuant to the ADA. *Surreply* [#104] at 2. Fourth, Plaintiff argues that, consistent with his Complaint, his medical files demonstrate that the "[C]DOC want[s] to do surgery on [Plaintiff's] arms and hands," presumably in an attempt to demonstrate

---

[2] There are two individuals named Steinbeck in Plaintiff's Complaint: Shirley Steinbeck and Lt. Steinbeck. The argument that Plaintiff fails to allege personal participation only applies to Defendant Shirley Steinbeck.

4

that Plaintiff is disabled with respect to his hands. *Response* [#102] at 2.³

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff

---

³ To the extent that Plaintiff attaches documents to his Response which are not also attached to or referenced in his Complaint, I do not consider them. However, where Plaintiff provides further detail in his Response regarding his claims which are not inconsistent with his Complaint, I will consider these statements.

could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft*,129 S. Ct. at 1949 (citation omitted).

In support of the Motion, Defendants attached the two relevant orders from the *Montez* proceedings. The proceedings are a matter of public record. *See Vibe Techs., LLC v. Suddath*, No. 06-cv-00812, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov. 22, 2006) (unpublished opinion) ("This Court may take judicial notice of courts documents and matters of public record."). Generally, when matters outside the pleadings are presented, the motion must be converted to one for summary judgment and reviewed under the standard set forth in Fed. R. Civ. P. 56. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215-16 (10th Cir. 2007). "However, notwithstanding the usual rule . . ., 'the district court my consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* at 1215 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). In addition, the Court may take judicial notice of public records in a prior court proceeding without converting a motion to dismiss into one for summary judgment. *City of Philadelphia v.*

6

*Fleming Cos.*, 264 F.3d 1245, 1251 n.4 (10th Cir. 2001).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

**A. Personal Participation**

Defendants Holst, Shirley Steinbeck and Griffith contend that Plaintiff's case against them should be dismissed because Plaintiff fails to allege that they personally participated in the alleged violations. *Motion* [#85] at 4. Specifically, Defendants argue that "[o]ther than mentioning Defendants Holst, Shirley Steinbeck and Griffith in the caption and 'Parties' section of [Plaintiff's] Complaint, [Plaintiff] fails to assert any facts against them anywhere in the Complaint." *Id.*

Evidence of a party's personal participation in an alleged constitutional violation is essential to proceeding with a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and the Defendants' participation, control or direction. *Whitelow v. Stanley*, 06-cv-02256, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007) (unpublished

7

decision) (citations omitted).  Furthermore, general, conclusory allegations, without supporting factual averments, are insufficient to state a claim against a defendant. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996).  Instead, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Further, Plaintiff's complaint must be based upon more than the mere allegation that because an individual is a supervisor, she is also responsible for Plaintiff's alleged injuries. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986); *see also Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992) (noting that in order to plead the liability of a supervisor, a plaintiff must show that he personally directed the alleged offensive conduct or knew plaintiff's rights were being violated but did not prevent it); *Benglen v. Zavaras*, 7 F. Supp. 2d 1171, 1173-74 (D. Colo. 1998) (requiring an "affirmative link" between supervisor's own conduct and the alleged violation).  "Because 'mere negligence' is not enough to hold a supervisor liable [pursuant to] § 1983, a plaintiff must establish that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur."  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

Contrary to Defendants' assertions, as explained below, I find that the allegations in Plaintiff's Complaint sufficiently implicate all Defendants for purposes of pursuing a § 1983 claim.  *See Complaint* [#37] at 6-10.  To the extent that Plaintiff must also allege the personal participation of individual Defendants to state a claim pursuant to the ADA, I find

8

that Plaintiff's Complaint also contains sufficient allegations against all Defendants to state a claim pursuant to the ADA.  *See Sartain v. Meyers*, No. CV 05-5067, 2008 WL 731046, at *9 (C.D. Cal. Mar. 12, 2008) (unpublished decision) (noting that personal participation is a prerequisite to stating a claim pursuant to the ADA).[4]

Specifically, Plaintiff alleges in Claim One that "[t]here is a letter from Anna Marie Campbell dated March 23, 2009 where she names all [D]efendants having conversations with her to prevent Plaintiff from having Books on Tape and this is a violation of the CDOC's [rules] which meens [sic] [that] all listed Defendants acted outside the scope of their authority." *Id.* at 6.  In addition, Plaintiff alleges in Claim Two that "[i]n the same letter mentioned in [Claim One] from [Defendant Campbell], she clearly admits that all Defendants conspired to take and not return [Plaintiff's] [b]ooks on [tape]."  *Id.* at 7. Further, in Claim Three Plaintiff alleges that a letter shows that "all Defendants discussed and conspired to keep religious material [away] from Plaintiff." *Id.* at 8.

In summary, although the individual claims do not refer to each Defendant by name, I find that the Complaint contains sufficient allegations against Defendants Holst, Shirley Steinbeck and Griffith to allege their personal participation and place them on notice of the allegations they are being required to defend against.  Specifically, I find that Plaintiff

---

[4] Although the ADA appears to require Plaintiff to sue an entity, see 42 U.S.C. § 12132 (making it illegal for an "entity" to discriminate against an individual with a disability), the Court notes that "[a]n individual may bring an ADA or § 1983 action against a *state official* in federal court for injunctive relief. . . ." *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1233 (10th Cir. 2001) (emphasis added).  Because Plaintiff here seeks injunctive relief and appears to assert liability against Defendants in their official capacities only, which operates as a claim against the state itself, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), the ADA does not appear to foreclose his suit.  *See Larson v. Snow Coll.*, 189 F. Supp. 2d 1286, 1292, 1301 n.15 (D. Utah 2000) (allowing a plaintiff to seek injunctive relief against individual defendants in their official capacities pursuant to Title II of the ADA).  As Defendants have not argued otherwise, I do not address the issue further.

9

alleges that all Defendants conspired to take, and subsequently took, Plaintiff's books on tape in order to deprive Plaintiff of his religious material and potentially violate the ADA and Plaintiff's constitutional rights. Further, to the extent that Defendants Holst, Shirley Steinbeck and Griffith are acting in a supervisory role, the alleged letter provides an affirmative link at this stage between their conduct and the alleged violations.

Accordingly, I recommend that the Motion be denied as it pertains to the issue of personal participation.

### B. Collateral Estoppel (Issue Preclusion)

Defendants move to dismiss Claims One and Two on the ground that they are barred by the doctrine of collateral estoppel.[5] *Motion* [#85] at 4-10. Specifically, Defendants allege that Plaintiff's claims relate to whether he is entitled to possess books on tape due to a hand disability. *Id.* at 9. Defendants claim that Plaintiff's disability was already litigated in *Montez*. *Id.* at 5. By contrast, Plaintiff argues that "Montez DID NOT deal with upper mobility impairment." *Response* [#102] at 1 (emphasis in original). Additionally, Plaintiff argues that any disability adjudicated in *Montez* only dealt with his mobility, not the dexterity in Plaintiff's hands. *See Surreply* [#104] at 1.

Collateral estoppel is "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985). "Under collateral estoppel, once a court has decided an issue

---

[5] Although Defendants appear to argue that all of Plaintiff's claims are barred by the doctrine of collateral estoppel, I note that neither *Montez I* nor *II* involved a First Amendment claim asserted pursuant to § 1983. While the Special Master considered whether Plaintiff was entitled to books on tape, he did not reach a decision as to whether the deprivation of Plaintiff's books on tape constituted a violation of his First Amendment right to practice his religion. Accordingly, I consider Defendants' collateral estoppel argument as to Claims One and Two only.

of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "In considering collateral estoppel, we must first determine whether to apply federal or state law." *Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992). Here, federal law controls because the case involves a federal question. *See Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971) (noting that "in non-diversity cases[,] . . . federal courts will apply their own rule of res judicata") (citation omitted); *see also Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990); *Restatement (Second) of Judgments* § 87, at 314 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

In the Tenth Circuit, the federal standard of collateral estoppel bars relitigation of an issue if:

> (1) the issue previously decided is identical with the one presented with the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is involved was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000). Defendants have the burden of setting forth facts sufficient to satisfy the elements of collateral estoppel. *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997).

With regard to class action adjudications, "[t]here is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 874 (1984) (citations omitted). Furthermore, "[b]asic principles of . . .

11

collateral estoppel (issue preclusion) apply" to decisions entered in class action lawsuits. *Id.* Finally, with respect to all matters, "[a] judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment." *Id.*

In support of their contention that Plaintiff's claims are collaterally estopped, Defendants identify the results of two hearings conducted in the *Montez* class action lawsuit where Plaintiff first won, and then lost, a mobility disability claim relating, in part, to Plaintiff's use of books on tape because of his "alleged inability to sign in" to the prison library. *Motion* [#85] at 7.[6] At the hearing conducted in *Montez I*, Plaintiff alleged that he suffered from a permanent mobility disability. *Montez I* at 4. The Special Master concluded that Plaintiff "has a complex disability involving both his lower back and legs and cervical spine and [Plaintiff's] inability to use his hands." *Id.* at 6. Based on his findings of fact, the Special Master found that "[Plaintiff's] problems constitute[] a substantial limitation on the major life activities of walking and mobility and anything that requires him to grip and to hold." *Id.* at 5. As a result, the Special Master awarded Plaintiff the restoration of his books on tape. *Id.* at 6.

At the *Montez II* hearing, which involved the reconsideration of the Special Master's holding in *Montez I* based on a videotape that showed Plaintiff walking upstairs without incident, the Special Master found that Plaintiff "[did] not appear to have difficulty . . . gripping" hand rails on the stairs. *Montez II* at 4. Additionally, based upon the new

---

[6] As noted above, the Court may take judicial notice of public records in a prior court proceeding without converting a motion to dismiss into one for summary judgment. *Fleming*, 264 F.3d at 1251 n.4; *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (citation omitted); *Powell v. Rios*, 241 Fed. Appx. 500, 501 n.1 (10th Cir. July 19, 2007) (unpublished decision).

evidence, the Special Master concluded that Plaintiff was "NOT mobility disabled." *Id.* at 5. Due to his reconsideration, the Special Master reversed his previous award of the restoration of Plaintiff's books on tape, and instead noted that the "CDOC has policies to determine whether an inmate qualifies for the books on tape program. Those polices must be followed." *Id.* at 6. Unlike in *Montez I*, the Special Master did not make any ruling as to whether Plaintiff had a disability relating to his difficulty in holding or gripping things in his hands or whether he was entitled to his books on tape. *See id.*

While the Special Master determined Plaintiff's disability based on legal standards pursuant to the ADA, his holding was limited to whether Plaintiff's current limitations were "sufficient to render him mobility disabled within the narrow limitations of the *Montez* case." *Id.* at 5. The Special Master's findings in *Montez II* were limited to Plaintiff's ability to walk, and whether his lack of mobility in this regard qualified him as disabled. *Id.* at 6. While he noted that Plaintiff "does not appear to have difficulty in gripping," he never specifically concluded that Plaintiff was not disabled in the use of his hands. *See id.* at 4. Furthermore, while the Special Master noted that he could identify no justification for the confiscation of Plaintiff's books on tape, he declined to require the CDOC to return the tapes or to address the issue further. *Id.* at 6. Given that the real focus of *Montez I* and *II* was on Plaintiff's lower-core mobility, including his ability to walk, the Tenth Circuit noted that "[Plaintiff] would not have been able to bring a claim or obtain relief based solely on a loss of dexterity in his hands." *Gibson*, 347 Fed. Appx. at 411.

Here, the issue is whether Plaintiff is disabled in the use of his hands. *Complaint* [#37] at 6-8. While it is true that Plaintiff "does not mention his hands anywhere in his . . . Complaint," Plaintiff's claims are based on "problems with dexterity." *Compare Motion*

13

[#85] at 9, *with Complaint* [#37] at 7. Specifically, the operative Complaint's entire focus, including its request for relief, is based on Plaintiff's dexterity problems and his alleged inability to read from books with pages. *Complaint* [#37] at 6, 7, 8, 10. Despite the similarities between *Montez I* and the instant case, the final order in *Montez II* failed to specifically reach the merits of whether Plaintiff was disabled in the use of his hands.

In collateral estoppel cases, "[f]ederal district and appellate courts should not attempt to divine the unspoken intent of [prior adjudications] rendering ambiguous decisions." *Entrup v. Colorado*, 30 F.3d 141 (table) (10th Cir. July 29, 1994) (unpublished decision) (citation omitted). "[W]here . . . the absence of [specific] findings leaves uncertain the legal basis of a prior decision, the requirements of collateral estoppel, particularly the actual litigation and necessary adjudication of common issues, may be impossible to satisfy." *Id.* The Court should not base any use of collateral estoppel "on impermissible speculation." *Id.* Finally, where ambiguity of a prior decision makes it impossible to determine if a decision was "essential to the judgment and necessarily determined in the first action," collateral estoppel does not apply. *Owens v. Treder*, 873 F.2d 604, 607 (2d Cir. 1989) (citations omitted).

Accordingly, I agree with the Tenth Circuit that on this record, "given the limited scope of the decision before the Special Master, any determination of the effect of [Plaintiff's] hand pain does not appear to have been necessary" to the judgment. *Gibson*, 347 Fed. Appx. at 411-12. This is particularly true in *Montez II*, where the Special Master did not decide whether Plaintiff was legally disabled in his hands and where he did not reach a decision regarding whether Plaintiff was entitled to his books on tape programs. Furthermore, I note that Plaintiff's potential disability classification in *Montez* was limited

14

to the agreed-upon areas of disability and did not encompass every type or category of disability implicated by the ADA.[7]

Therefore, I find that Plaintiff's ADA claims are not barred by the doctrine of collateral estoppel because Defendants have failed to meet their burden of proving the four required elements. (1) While both *Montez I* and *II* addressed Plaintiff's hand dexterity, they did so (particularly in *Montez II*) in relation to Plaintiff's classification as mobility disabled. Therefore, I find that the first element of collateral estoppel is not met because the issue currently alleged is not identical to the issue previously litigated in *Montez II*. (2) The prior actions, *Montez I* and *II*, were fully adjudicated; however, Plaintiff's current hand disability was only addressed tangentially in determining whether Plaintiff was mobility disabled. Because Plaintiff's alleged hand disability was never adjudicated on the merits, the second element of collateral estoppel is not met. (3) While the third element of collateral estoppel is satisfied because Plaintiff is the party against whom estoppel is asserted and Plaintiff was a party in *Montez*, (4) the fourth element is not satisfied because Plaintiff did not have a full and fair opportunity to litigate the dexterity problem in his hands pursuant to the broad protections of the ADA. Instead, the Special Master in *Montez II* limited his findings about Plaintiff's dexterity to Plaintiff's lower-core mobility.

Accordingly, I recommended that the Motion be denied as it pertains to the issue of collateral estoppel.

---

[7] The *Montez* hearings specifically adjudicated whether Plaintiff was disabled pursuant to the Remedial Plan that was limited to four categories: "mobility, vision, hearing and diabetes." *Montez I* at 5. In contrast, the ADA allows for a broader definition of the term "disability." *See* 42 U.S.C. § 12102(2) (defining "disability" as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual"); *see also* 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B); 29 C.F.R. § 1630.2(i) (defining "major life activities" as those "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").

## C. Merits of ADA Claims (Claims One & Two)

In the alternative, Defendants contend that Plaintiff has failed to state a claim pursuant to the ADA. *Motion* [#85] at 11-12. Specifically, Defendants argue that Plaintiff's "Complaint only contains conclusory statements that [Plaintiff] has a 'disability.'" *Id.*

The ADA makes it illegal to discriminate in government programs, activities and services against a qualified individual with a disability. *See* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). The "general standard, which closely tracks the statute's language, [and] is plainly correct" requires that Plaintiff allege three elements to state a claim pursuant to the ADA. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999). To state a claim Plaintiff must, in a non-conclusory fashion, demonstrate, "(1) that he is a qualified individual with a disability; (2) that he was . . . denied the benefits of [the prison's] services, programs, or activities, or was otherwise discriminated against by the [prison]; and (3) that such . . . denial of benefits[] or discrimination was by reason of the plaintiff's disability." *See Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1439 (D. Kan. 1994); *see also Meyers v. Colo. Dep't of Human Servs.*, 62 Fed. Appx. 831, 832 (10th Cir. Jan. 6, 2003) (unpublished decision). The ADA requires public entities to make particular accommodations for the disabled in order to ensure their access to government programs. *Tyler*, 849 F. Supp at 1439. Importantly, Title II of the ADA pertains to state prisoners. *See Roberston v. Las Animas County Sherriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

In relation to the first factor, "[t]he determination of whether an individual has a

disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. § 1630.2(j). Furthermore, "the ADA defines disability as '(A) a physical or mental impairment that substantially limits one or more of the major life activities.'" *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1250 (10th Cir. 2004) (quoting 42 U.S.C. § 12102(2)). To determine whether a "major life activity" has been alleged, the court should "ask whether [the] activity [at issue] is significant within the meaning of the ADA, rather than whether that activity is important to the particular individual." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999); *see also* 42 U.S.C. 12102(2)(A) (listing learning, reading, thinking, and working as major life activities). Finally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 129 S. Ct. at 1949.

In the instant case, Plaintiff contends that he has a "disability (DEXTERITY)" and argues that the CDOC "recognized [his disability] for years and years." *Complaint* [#37] at 4; *Surreply* [#104] at 2. Further, he argues that non-medical staff confiscated Plaintiff's books based on a misunderstanding of *Montez II* and now Plaintiff cannot preform the major life activity of reading because of his disability. *Complaint* [#37] at 6; *Surreply* [#104] at 2. Additionally, Plaintiff claims that his "[m]edical file is full of documentation" and that "his working file has information pertaining to dificulty [sic] in placing Plaintiff in jobs because of [his] disability and problems with dexterity." *Complaint* [#37] at 7.[8]

---

[8] As discussed earlier, Plaintiff attaches medical files to his *Response* [#102] at 3-5. However, because the allegations in the Complaint must be taken as true, the medical files are unnecessary in my

17

While Plaintiff ultimately may not be able to prove that he is disabled, he has alleged more than conclusory statements in support of his ADA claims. (1) Plaintiff alleges that medical and work files demonstrate that he has a disability involving the use of his hands which impairs his ability to work and read. Further, Plaintiff claims that a doctor's order previously identified him as disabled and was rescinded based on Defendants' conspiracy to misapply the results of *Montez II*. Because Plaintiff claims to have several different sources that document his current disability and prove that his disability interferes with the major life activities of working and reading, I find that Plaintiff has alleged more than threadbare conclusions to support the first element required to state an ADA claim. (2) Further, Plaintiff's allegation that despite the fact of his disability, he has been deprived of the benefit of access to the books on tape program provides sufficient information in relation to the second element required to state an ADA claim. *See Complaint* [#37] at 7; *Surreply* [#104] at 2. Finally, (3) Plaintiff's allegation that Defendants are discriminating against him by refusing to recognize Plaintiff's disability and to provide him access to a program that would allow him to remedy his inability to read provides sufficient information in relation to the third element required to state an ADA claim.

Accordingly, I recommend that the Motion be denied as it pertains to dismissal of Plaintiff's ADA Claims One and Two.[9]

### IV. Conclusion

---

review of whether Plaintiff has stated a claim.

[9] Other than an insufficient collateral estoppel argument, see *supra* note 5, Defendants do not raise any substantive arguments regarding Claim Three, which relates to Plaintiff's First Amendment right to practice his religion. Accordingly, the Court does not address Claim Three.

For the aforementioned reasons, I respectfully **RECOMMEND** that Defendants' **Motion to Dismiss** [#85] be **DENIED** and that Plaintiff's claims go forward on their merits.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 13, 2010

BY THE COURT:
 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix