IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00983-WYD-KLM

WELLMAN E. GIBSON,

      Plaintiff,

v.

ANNA MARIE CAMPBELL,
C. HOLST, AIC,
SHIRLEY STEINBECK,
MARSHALL GRIFFITH,
LT. STEINBECK, and
DOCTOR AASEN,

      Defendants.

_____

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L.  MIX**

This matter is before the Court on **Defendants' Motion for Summary Judgment**
[Docket No. 236; Filed November 15, 2011] and **Plaintiff's Motion for Summary
Judgement** [sic] [Docket No. 245; Filed November 18, 2011] (collectively, the "Motions").
Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motions are
referred to this Court for recommendation [## 237, 246].  The matters are briefed and ripe
for resolution.  The Court has considered Defendants' Motion [#236], Plaintiff's Response
in opposition to Defendants' Motion [#268] (actually titled as a reply to Defendants' Motion),
and Defendants' Reply in support of their Motion [#269]; and Plaintiff's Motion [#245],
Defendants' Response in opposition to Plaintiff's Motion [#250], and Plaintiff's Reply in
support of his Motion [#267].  The Court has reviewed the case record and the applicable

law, and is sufficiently advised in the premises.  For the reasons stated below, the Court

respectfully **RECOMMENDS** that Defendants' Motion [#236] be **GRANTED IN PART** and

**DENIED IN PART**, and Plaintiff's Motion [#245] be **DENIED**.[1]

## I.  Summary of the Case and Procedural Background

Plaintiff is a *pro se* inmate incarcerated in the Colorado Territorial Correctional

Facility ("CTCF"), a prison under the management of the Colorado Department of

Corrections ("CDOC").  [#255].  At the time of the events described in Plaintiff's Amended

Complaint, which is the operative pleading, Plaintiff was incarcerated at the Arkansas

Valley Correctional Facility ("AVCF"), another CDOC prison.  *See* [#37].  Pursuant to 42

U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), Plaintiff raises three claims

for relief relating to Defendants' alleged denial of Plaintiff's access to the prison's books on

tape program, which is facilitated by the Colorado Talking Book Library ("CTBL").  *Id.* at 4-

8.  Specifically, Plaintiff contends that he suffers from a dexterity disability which prevents

him from using his hands to read and, therefore, depriving him of books on tape through

the CTBL program violates the ADA.  *Id.* at 3-5.  Plaintiff further asserts that Defendants

conspired to deprive him of his CTBL materials, and that the removal of his religious books

on tape violates his right to freely exercise his religion.  *Id.*

Prior to the current litigation, Plaintiff was a claimant in the *Montez v. Owens* class

action lawsuit, in which a Special Master determined whether Plaintiff is mobility disabled.

---

[1] The Court issued an Order and Recommendation on the Motions on May 11, 2012 [#297] ("May 11, 2012 Recommendation").  On May 14, 2012, the Court issued an order to vacate and restrict the May 11, 2012 Recommendation.  The instant Order and Recommendation supercedes the vacated May 11, 2012 Recommendation.  The result stated in the instant Order and Recommendation is the same as that stated in the May 11, 2012 Recommendation; however, the underlying reasoning has been modified.  *See infra*, p. 20-21.

*See Montez v. Owens*, No. 92-cv-00870-JLK-OES.  In *Montez*, the Special Master initially found that Plaintiff "has a complex disability involving both his lower back and legs and also his cervical spine and the inability to use his hands." *2007 Final Order of Special Master* [#85-2] at 6.  Upon reconsideration, however, the Special Master amended his findings (based on new video evidence of Plaintiff walking up and down stairs without difficulty) and concluded that Plaintiff "fails to meet the requirements to be mobility disabled." *2008 Amended Final Order of Special Master* [#85-3] at 6.

After the Special Master's amended findings, Plaintiff filed the present lawsuit alleging that he has a dexterity disability and is entitled to participate in the CTBL program. Initially, Plaintiff's case was dismissed as legally frivolous given its factual similarity to *Montez*.  *Gibson v. Campbell*, Case No. 09-cv-00983, 2009 WL 1550192, at *2 (D. Colo. May 29, 2009) (unpublished decision).  On appeal, the Tenth Circuit reversed the dismissal. *Gibson v. Campbell*, 347 F. App'x 409, 412 (10th Cir. 2009) (unpublished decision); *see also Ord.*, [#33].   The Tenth Circuit found that Plaintiff's hand limitations were not necessary to the Special Master's determination in *Montez*.   347 F. App'x at 411. Additionally, the Tenth Circuit noted that "on the limited appellate record now before us, principles of res judicata should not bar [Plaintiff's] current suit."  *Id.*  However, the Tenth Circuit qualified its decision by stating that its preliminary holding did not "preclude further evidence or argument on the issue of res judicata or issue preclusion."[2]  *Id.* at 412.  The case was then remanded.  *Id.*

---

[2]  Notably, Defendants do not present defenses of res judicata or issue preclusion in their Motion for Summary Judgment.  *See* [#236].

On remand, the action was drawn to the undersigned, [#48], and Defendants were served, *see* [#53].  Defendants responded to Plaintiff's Amended Complaint with a Motion to Dismiss [#85].  The Court recommended that the Motion to Dismiss be denied, [#115], and the Recommendation was adopted in full on August 17, 2010 [#116].  Defendants filed an Answer on August 26, 2010 [#122].  On January 3, 2011, Plaintiff requested a stay of proceedings because he was scheduled to undergo surgery [#161].  The Court imposed a stay on March 30, 2011 because Plaintiff's surgery could require up to twelve weeks of recovery time [#195].  The stay expired on August 1, 2011.  *See id.*  The Court then set the deadline for the filing of any dispositive motions at November 18, 2011 [#232].  Both Motions are timely filed.

Plaintiff asserts three claims in his Amended Complaint:

Claim One:  Defendants refused to abide by the ADA guidelines when evaluating Plaintiff's asserted upper extremity impairment.  *Am. Compl.*, [#37] at 6.  In addition, a letter from Defendant Campbell implicates all Defendants in a conspiracy to prevent Plaintiff from participating in the CTBL program.  *Id.*

Claim Two:  Defendants failed to acknowledge Plaintiff's dexterity disability in violation of the ADA, despite the previous verification of Plaintiff's impairment by CDOC doctors.  *Id.* at 7.  Specifically, as part of the alleged conspiracy, Defendant Dr. Aasen was pressured by the other Defendants to rescind his prior verification of Plaintiff's application to the CTBL program.  *Id.*

Claim Three: Defendants confiscated Plaintiff's religious books on tape in violation of his First Amendment rights.  *Id.* at 8.  Defendant Lt. Steinbeck took Plaintiff's religious materials and contacted a group called "JBI" to prevent Plaintiff from receiving large print

4

versions of the Tanakh in Hebrew. *Id.*

Plaintiff requests only injunctive relief, in the following forms: 1) acknowledgment of his disability by CDOC; 2) return of all materials associated with the prison's books on tape program, including "religious material"; and 3) notification of CTBL and "JBI" that Plaintiff is now permitted to receive the materials he requested from them. *Id.* at 10. As explained in the Recommendation issued July 13, 2010, because Plaintiff seeks only injunctive relief, the Court construes his claims against Defendants in their official capacities only, which operates as an action against the state itself.[3] *See* [#115] at 9 n.4.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

---

[3] "An individual may bring an ADA or § 1983 action against a state official in federal court for injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908)." *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1233 (10th Cir. 2001) (citations omitted). *See also Larson v. Snow College*, 189 F. Supp. 2d 1286, 1302 (D. Utah 2000) (allowing a plaintiff to seek injunctive relief against individual defendants in their official capacities pursuant to Title II of the ADA); *Defs.' Motion*, [#236] at 10 n.2 ("Defendants agree that an action against a public official is equivalent to an action against an entity.").

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's filings, the Court is mindful that it must construe the submissions of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should

6

not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

Defendants request summary judgment in their favor as to all of Plaintiff's claims. [#236].  Plaintiff likewise requests summary judgment in his favor [#245].  The Court addresses both Motions below.

### III.  Statement of Undisputed Facts

Pursuant to Fed. R. Civ. P. 56(c), when submitting a motion for summary judgment for the Court's review, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . documents [and] affidavits."  If the responding party (here, both sides) "fails to properly address [the movant's] assertion of fact as required by Rule 56(c)," the Court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

The parties each included an "undisputed" statement of facts in their respective Motions.  *See* [#236] at 1-8; [#245] at 2-5.  The Court has reviewed the proffered statements of fact and the accompanying evidentiary support, as well as the opposing side's rebuttal.  Keeping in mind that the evidence presented in support of a statement of fact must be admissible, *see* Fed. R. Civ. P. 56(c), the Court recommends finding that the following facts are undisputed:

1.  CDOC participates in the Colorado Talking Book Library (CTBL) program, which is a free service offered cooperatively by the Library of Congress and the Colorado State Library that provides audio, Braille and large print books and magazines to eligible inmates. The service includes loans of talking book machines for the purpose of playing audio materials.  *Aff. of Anna Marie Campbell* ("Campbell Aff."), [#236-3] at ¶ 5; Administrative Regulation (AR) 500-02(III)(C), [#236-4] at 1.

8

2.  The CTBL service is available to CDOC inmates who meet the CTBL's eligibility criteria, which includes blindness, visual disability, physical disability (unable to hold book and/or turn pages), deafness/blindness, and learning disability.  Campbell Aff., [#236-4] at ¶¶ 5, 6; *see also* CTBL Application ("CTBL App."), [#236-3] at 10-11.

3.  The CTBL allows the qualifying CDOC inmate to have a talking book machine in his or her cell.  Campbell Aff., [#236-4] at ¶ 8.

4.  Atrophy has been present in Plaintiff's left arm since 1999.  *Aff. of Paula J. Frantz, M.D.* ("Frantz Aff."), [#236-6] at ¶ 9.  The atrophy is related to a cervical spine fusion, and has been stable and not progressive.  *Id.*  Plaintiff also has carpel tunnel syndrome in his right hand, resulting from repetitive hand movements.  *Id.* at ¶ 10.

5.  In a letter dated August 24, 2005 to Plaintiff from Kellie Wasko, RN, the CDOC Health Services Administrator, Nurse Wasko states that Plaintiff "always had the talking books" while at AVCF.  [#268] at 19.  Nurse Wasko recalled that "there was a lot of documentation in [Plaintiff's] records to substantiate the talking books."  *Id.*

6.  Plaintiff was a claimant in the class action lawsuit, *Montez*, in which a Special Master determined whether claimants suffered from a disability related to vision, hearing, mobility or diabetes.  *See Final Order of Special Master* (June 22, 2007), [#236-1].

7.  On September 20, 2005, a CDOC health provider, Renee Martinez, evaluated Plaintiff for *Montez* accommodations, noted that Plaintiff "may benefit from talking books and tape player," and ordered the same.  Ambulatory Health Record (dated 09/20/2005), [#269-1] at 8.

8.  On October 18, 2005, the CDOC Office of the ADA Inmate Coordinator ("AIC") determined that Plaintiff did not have a disability.  [#269-1] at 9.  The Chief Medical Officer

signed the determination.  *Id.*

9.  On August 2, 2006, P. Beercroft, M.D., a CDOC doctor, screened Plaintiff for a disability, and indicated that Plaintiff's hands "go into spasm after 20 min." of writing or manipulating objects.  [#268] at 15, 17.  Dr. Beercroft noted that Plaintiff's "hands tire holding books, so he has audio books."  *Id.*

10.  On September 25, 2006, Dr. Beercroft responded to a kite submitted by Plaintiff regarding *Montez*-based accommodations, and stated that the accommodations would not be issued unless Plaintiff was deemed disabled by the "central office."  Ambulatory Health Record (dated 09/25/2006), [#269-1] at 12.

11.  On February 21, 2007, and November 26, 2007, the CDOC Office of the AIC determined that Plaintiff did not have a disability.  [#269-1] at 13, 14.  The Chief Medical Officer signed the determination.  *Id.*

12.  On June 22, 2007, the *Montez* Special Master issued a written order finding that Plaintiff had a mobility disability.  *Id.* at 5 ("Claimant has demonstrated that his chronic back pain and radiculopathy, coupled with his cervical problems constitutes a substantial limitation on the major life activities of walking and mobility and anything that requires him to grip and to hold.").

13.  The *Montez* defendants filed an objection to the Special Master's June 22, 2007 written order.  *See Amended Final Order of Special Master* (July 16, 2008), [#236-2].

14.  Defendant Cathie Holst was the AIC for CDOC from August 27, 2003, to September 30, 2009.  *Aff. of Cathie Holst* ("Holst Aff."), [#236-8] at  ¶ 2.

15.  As the AIC, Defendant Holst oversaw all inmate requests for accommodations due to a disability, in addition to all *Montez* claims and orders issued as a result of the

Special Master's hearings. *Id.* at ¶ 3.

16. After the *Montez* Special Master's initial June 22, 2007 written order, Defendant Holst states that the CDOC provided Plaintiff with CTBL materials, even though he had never been determined to be disabled pursuant to CDOC procedures. *Id.* at ¶ 5.

17. Defendant Holst decided to remove Plaintiff's CTBL materials once the June 22, 2007 was appealed and a second hearing was conducted. *Id.* at ¶ 7.

18. The Office of the AIC contacted Defendant Shirley Steinbeck on February 19, 2008, to instruct that Plaintiff's CTBL materials be removed. *Aff. of Shirley Steinbeck* ("Steinbeck Aff."), [#236-9] at ¶ 4. The materials were taken from Plaintiff on the same date by Defendant Lt. Robert Steinbeck. *Id.* at ¶ 5.

19. On July 16, 2008, the *Montez* Special Master issued an amended written order reversing the June 22, 2007 written order. The *Montez* Special Master found that Plaintiff "is not disabled," and noted that the medical problems suffered by Plaintiff do not rise to the level of limitations on Plaintiff's daily life activity. *Id.* at 6.

20. The *Montez* Special Master reviewed previously unavailable evidence in issuing the Amended Final Order, namely, "visual evidence of [Plaintiff] walking and climbing stairs while carrying objects." *Id.* at 4; *see also* Frantz Aff., [#236-6] at ¶ 19.

21. In a CDOC Progress Assessment Summary dated November 11, 2008, the section labeled "Medical/Dental" includes a statement that Plaintiff had been allowed use of audio books "[d]ue to his documented physical limitations specifically with his dexterity." [#268] at 33, 35. Plaintiff's prior CDOC Progress Assessment Summaries dated May 18 and November 14, 2007, indicate the same. *Id.* at 37, 39.

22. Eligibility for the CTBL service must be verified by a health care professional

who checks the appropriate eligibility requirement box and signs the application form. Campbell Aff., [#236-4] at ¶ 7; *see also* AR 500-02 [#236-4] at 8; CTBL App., [#236-3] at 6; [#268] at 41 (email from Defendant Steinbeck).

23.  This verification requirement became effective on December 15, 2008.  Prior to this date, inmates did not need verification from a medical provider to participate in the CTBL program.  Campbell Aff., [#236-4] at ¶ 7.

24.  Plaintiff included copies of previously approved CTBL applications that were signed by Dr. Wermers at AVCF with his attempts to restore his use of the CTBL program. [#268] at 41 (email dated January 8, 2009, from Defendant Shirley Steinbeck to Marshall Griffith).

25.  Defendant Campbell received a CTBL application from Plaintiff in late January 2009.  Defendant Dr. Aasen signed the verification section on the application, indicating that Plaintiff was eligible for the CTBL program due to a physical disability. *Id.* at ¶ 11; *see also* CBTL App., [#236-3] at 6.

26.  Plaintiff participated in the CTBL program for a number of years before submitting the application in late January 2009, and preceding Defendant Dr. Aasen's employment at AVCF.  *Aff. of Michael Aasen, M.D.* ("Aasen Aff."), [#236-5] at ¶ 4. Defendant Dr. Aasen approved Plaintiff's CTBL application based solely on Plaintiff's prior usage of the service.  *Id.*

27.  At the time when Dr. Aasen approved Plaintiff's application to participate in the CTBL program in late January 2009, he did not make an independent determination that Plaintiff had a physical disability which limited his ability to hold a book or turn pages.  *Id.* at ¶ 5.

28.  Defendant Campbell sent Plaintiff's January 2009 CTBL application to the State Librarian, and to Defendant Shirley Steinbeck at AVCF.  Campbell Aff., [#236-3] at ¶ 12.

29.  On January 29, 2009, Defendant Shirley Steinbeck contacted Defendant Campbell and informed her that the Special Master determined that Plaintiff did not have a disability pursuant to the *Montez* criteria.  *Id.* at ¶ 13.

30.  On February 10, 2009, Defendant Campbell contacted the State Librarian assigned to CDOC and informed her that the Special Master determined that Plaintiff was not disabled pursuant to *Montez*.  *Id.* at ¶ 16.  The State Librarian informed Defendant Campbell that a medical provider would need to verify whether Plaintiff was eligible for the CTBL program.  *Id.* at ¶ 17.

31.  On February 11, 2009, Defendant Campbell contacted Defendant Dr. Aasen and asked him to re-evaluate Plaintiff for the purpose of determining whether Plaintiff qualified for participation in the CTBL program.  *Id.* at ¶ 18; *see also* Aasen Aff., [#236-5] at ¶ 6.

32.  On February 17, 2009, Defendant Dr. Aasen informed Defendant Campbell that Plaintiff did not meet the criteria for participation in the CTBL program, based on Plaintiff's medical history.  Campbell Aff., [#236-3] at ¶ 19; Aasen Aff., [#236-5] at ¶ 7; Frantz Aff., [#236-6] at ¶ 13.

33.  On March 4, 2009, Defendant Dr. Aasen met with Plaintiff to discuss the CTBL criteria.  Aasen Aff., [#236-5] at ¶ 8.  During the discussion, which lasted for approximately twenty minutes, Plaintiff repeatedly picked up, read, and turned pages of multiple documents without any difficulty.  *Id.*  Defendant Dr. Aasen thus determined that Plaintiff was not eligible for the CTBL program based on a physical disability.  *Id.*; *see also* Frantz

Aff., [#236-6] at ¶ 15.

34.   CDOC evaluates inmates for disabilities other than those identified by the *Montez* litigation.  Frantz Aff., [#236-6] at ¶ 20.  The *Montez* litigation identified mobility, diabetes, and hearing and/or vision impairments as disabilities.  *Id.*

35.   CDOC evaluates inmates for any claimed disabilities and issues accommodations if warranted.  *Id.*  The procedures for evaluating an inmate's claimed disability are set forth in AR 750-04.  *Id.* at ¶ 21; *see also* AR 750-04, [#236-7].

36.   AR 750-04 defines disability as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment."  [#236-7] at 2.

37.   To request an accommodation based on a disability, an inmate must complete the Offender Request for Accommodation and Functional Ability Questionnaire, and submit these two forms to the facility's AIC.  *Id.*  The AIC refers the inmate to clinical services, which schedules the inmate for a screening with a health care provider, who then makes a recommendation as to whether the inmate has a disability.  Frantz Aff., [#236-6] at ¶ 22.

38.   The determination for an upper extremity disability is based on a physical exam using range of motion, muscle strength, grip strength, and observed functional capacity.  *Id.* at ¶ 23.

39.   Plaintiff's medical records show that he has not been determined to have an upper extremity disability by the CDOC.  Aasen Aff., [#236-5] at ¶ 5; *see also* Frantz Aff., [#236-6] at ¶ 13; Ambulatory Health Record (dated 02/17/2009), [#236-6] at 11.

40.   Plaintiff underwent an evaluation for an upper extremity disability in 2007, and was found to not have a disability.   *Id.* at ¶ 24; Ambulatory Health Record (dated

14

10/29/2007) ("Oct. 2007 Record"), [#236-6] at 18-19.  The provider conducting the evaluation noted that Plaintiff was able to climb and descend stairs without difficulty, while carrying boxes, or a mattress and a pillow.  Oct. 2007 Record, [#236-6] at 18.  The provider further observed that Plaintiff could write with an ink pen 14 cm in length, could take his boots on and off, and pushed and navigated a wheelchair holding a 150-lb person, all without difficulty or assistance.  *Id.*

41.  On March 9, 2009, Plaintiff was scheduled to again be evaluated for an ADA disability in the prison clinic.  Frantz Aff., [#236-6] at ¶ 16.  Plaintiff refused the exam, on the basis that "per federal guidelines PA are not supposed to do ADA."  *Id.*; *see also* Ambulatory Health Record (dated 03/09/2009), [#236-6] at 14; [#268] at 59 (letter indicating Plaintiff's refusal to cooperate with the screening process).

42.  On November 15, 2010, the CDOC's Office of Correctional Legal Services received a Request for Accommodation filled out by Plaintiff, in which he requested participation in the "books on tape" program, as well as "slip on shoes", both due to "dexterity problems."  [#268] at 46.

43.  On April 14, 2011, Plaintiff underwent right carpal tunnel release surgery. Frantz Aff., [#236-6] at ¶ 26.

44. On July 13, 2011, Plaintiff's recovery was evaluated in the prison clinic, and the provider noted that Plaintiff's right wrist had a "well-healed scar [. . .] [t]ender to palpation over the scarline and proximal forearm."  Ambulatory Health Record (dated 07/13/2011), [#236-6] at 22.  The provider observed that Plaintiff could perform a "pincher motion with thumb to index finger, 3, 4, and 5th finger," and there was no swelling of Plaintiff's right hand or wrist.  *Id.*

45.  On July 29, 2011, Plaintiff was evaluated by the surgeon who performed the carpal tunnel release.  Frantz Aff., [#236-6] at ¶ 29.  The surgeon's Office Visit Notes state "good result for carpal tunnel release. Wants to proceed with left ulnar transposition.  Will schedule."  Office Visit Notes, [#236-6] at 23.

46.  On September 7, 2011, Plaintiff was evaluated in the prison clinic, and the provider noted that he has normal strength bilaterally in his upper extremities.  Frantz Aff., [#236-6] at ¶ 30; Ambulatory Health Record (dated 09/07/2011), [#236-6] at 24 ("Strength bilat UE is 5/5").

47.  On September 26, 2011, Plaintiff underwent surgery to treat ulnar neuropathy located at his left elbow.  Frantz Aff., [#236-6] at ¶ 31; Ambulatory Health Record (dated 09/26/2011), [#236-6] at 24.  Post-operative notes indicate that Plaintiff could move all of his fingers on his left hand after surgery without problem.  Integrated Progress Notes (dated 9/26/11), [#236-6] at 26.

48.  Provider notes from an evaluation of Plaintiff conducted on October 11, 2011, indicate that Plaintiff was healing well from his surgeries, and that his condition was stable.  Ambulatory Health Record (dated 10/11/2011), [#236] at 27.

49.  Plaintiff's medical records indicate normal muscle strength in both hands.  Frantz Aff., [#236-6] at ¶ 34.

50.  Although Plaintiff's CTBL materials were removed from his cell on February 19, 2008, Plaintiff retained access to books and magazines through AVCF's library program.  Steinbeck Aff., [#236-9] at ¶ 8; *see also* AR 500-02, [#236-4] at 7-8.

51.  Through the statewide library program, inmates have access to a wide range of written materials, including religious books, such as books on Judaism, Old Testament

studies, and Jewish history.  Steinbeck Aff., [#236-9] at ¶ 9.

52.  The AVCF library has both cassette tape and CD players with headphones that inmates can use to listen to audio books.  Steinbeck Aff., [#236-9] at ¶ 10.  Inmates may also access audio books through the statewide interlibrary loan program.  *Id.*  To use the audio books, inmates may sign up for a specific time to do so when the inmate is in the library.  *Id.*

## IV.  Analysis

**A.    ADA**

Pursuant to Title II of the ADA, it is illegal to discriminate in government programs, activities, and services against a qualified individual with a disability.  *See* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").  This provision of the ADA applies to state prisoners.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("[s]tate prisons fall squarely within the statutory definition of 'public entity'"); *see also Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (citation omitted).  To establish a claim pursuant to Title II of the ADA, Plaintiff must prove the following: "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of [the prison's] services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."  *Nasious v. Colo. - Office of Gov. Ritter*, No. 09-cv-01051-REB-KMT, 2011 WL 2601015, at *2 (D. Colo. June 29, 2011) (citing *Robertson*, 500 F.3d at 1193).  The Court addresses each of the above-stated ADA elements in turn, in the context of Plaintiff's first

17

and second claims for relief.

In relation to the first element, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Plaintiff must prove by a preponderance of the evidence that he has a disability. *Holt*, 443 F.3d at 765. Pursuant to the ADA,

> The term "disability" means, with respect to an individual--
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). "Reading" is included in the list of major life activities contemplated by the ADA. 42 U.S.C. § 12102(2)(A).

"Whether the plaintiff has an impairment within the meaning of the ADA and whether the conduct affected is a major life activity for purposes of the ADA are questions of law." *Holt v. Grand Lake Mental Heath Ctr., Inc.*, 443 F.3d 762, 765 n.1 (10th Cir. 2006). If the legal questions regarding whether Plaintiff has an impairment and whether the conduct affected is a major life activity are resolved in Plaintiff's favor, then the Court may decide "whether the impairment *substantially limits* the major life activity," if resolvable by a motion for summary judgment. *Holt*, 443 F.3d at 765 n.1 (emphasis added).

As stated, Plaintiff contends that he suffers from a dexterity disability which prevents him from using his hands to read books. Thus, Plaintiff believes that he is eligible to participate in the CTBL program. The CTBL program's eligibility requirements include a provision that the user be "unable to handle print books or turn pages because of a physical

disability." [#236-3] at 10. According to Dr. Frantz, the CDOC's Chief Medical Officer, "[t]he determination for upper extremity disability is based on a physical exam using range of motion, muscle strength, grip strength, and observed functional capacity." Frantz Aff., [#236-6] at 5.

In their Motion, Defendants assert that Plaintiff is not a qualified individual with a disability pursuant to the ADA. [#236] at 10. Defendants contend that, pursuant to Plaintiff's medical records and observations of Plaintiff by prison officials, Plaintiff's upper extremity medical conditions do not render him unable to hold a book or turn pages. *Id.* at 11-12. Defendants further assert that Plaintiff does not have a record of disability, nor is he regarded as disabled. *Id.* at 13, 14. In support of these arguments, Defendants rely on affidavits from prison officials, including Defendant Dr. Aasen, who reversed his verification of the January 2009 CTBL application submitted by Plaintiff; Dr. Frantz, CDOC's Chief Medical Officer; Defendant Cathie Holst, CDOC's AIC during the time relevant to Plaintiff's claims; and Defendant Shirley Steinbeck, who is the litigation coordinator at the AVCF. *See* Statement of Undisputed Facts ("Facts"), *supra* pp. 8-17. In support of their position that CDOC has properly concluded that Plaintiff is not disabled pursuant to the ADA, Defendants further rely on Plaintiff's medical records indicating normal grip strength and agility, the *Montez* Special Master's amended final order, and a video of Plaintiff carrying his bedding up a flight of stairs. *See* [#236] at 11-14. Additionally, Defendants note that Plaintiff has not cooperated with prison medical providers to undergo an ADA medical examination. Facts, *supra* p. 15, ¶ 41.

Plaintiff presents evidence to the contrary. Plaintiff offers documentation indicating that at various points throughout his incarceration in the CDOC, prison officials have

19

considered him as having a dexterity limitation that necessitates his use of audio books. Specifically, Plaintiff's supportive documentation includes Nurse Waskos' August 24, 2005 letter; Dr. Creany's evaluation of Plaintiff on September 16, 2005 ([#245] at 22); an evaluation of Plaintiff by Renee Martinez on September 20, 2005; Dr. Beercroft's evaluation of Plaintiff on August 2, 2006; CDOC Progress Assessment Summaries for Plaintiff dated May 18 and November 14, 2007 and November 11, 2008; Defendant Dr. Aasen's initial approval of Plaintiff's CTBL application; and an email dated January 8, 2009, indicating that Plaintiff's previous CTBL applications were approved by Dr. Wermers at AVCF. *See* Facts, *supra* pp. 8-17.

As explained above, "disability" means "a physical impairment . . . that substantially limits one or more major life activities," or "a record of such an impairment." 42 U.S.C. § 12102(1)(A), (B). Determination of the existence or record of a physical impairment, and whether the conduct allegedly affected by the physical impairment is a major life activity, are questions of law for the Court to decide. *Holt*, 443 F.3d at 765 n.1. Here, the activity at issue is reading, which is recognized as a major life activity by the ADA. *See* 42 U.S.C. § 12102(2)(A). The alleged physical impairment is Plaintiff's upper extremity mobility and dexterity limitation. Both sides present contradicting evidence as to the existence of a current impairment, which ordinarily would preclude a factual finding by the Court. However, the law requires the Court to make a legal determination of whether Plaintiff has an "impairment," or a record of one, for purposes of the ADA.

It is a difficult legal question as to whether Plaintiff currently has a physical impairment. The evidence presented by Plaintiff is older than that presented by Defendants, and perhaps outdated. More importantly, Plaintiff has recently undergone two

surgeries on his upper extremities, as well as observation of his hand dexterity by a physician, who concluded that Plaintiff was not eligible for the CTBL program. Despite the conflicting evidence about whether Plaintiff can hold and read a book or not, Plaintiff has presented a record of a dexterity impairment in his hands.[4]   *See* 42 U.S.C. § 12102(1) (definition of disability includes a record of a physical impairment). Therefore, as a matter of law, the Court concludes that Plaintiff has presented an adequate record in support of his physical impairment, that is, the mobility and dexterity limitations in his hands.

In sum, the Court recommends finding that Plaintiff is an individual who has a record of a physical impairment of limited mobility and dexterity in his hands, and that reading is a major life activity. The Court may further decide "whether the impairment substantially limits the major life activity" as a question of fact, if resolvable by a motion for summary judgment. *Holt*, 443 F.3d at 765 n.1. Here, the Court recommends that the District Judge decline to do so. The Court is not persuaded that the video recording of Plaintiff carrying his mattress up a flight of stairs and the medical records indicating Plaintiff's normal grip strength are dispositive as to whether Plaintiff's physical impairment substantially limits his ability to read a book with pages. Neither of these activities appear to the Court to measure the act of holding a book and turning pages for an adequate period of time to facilitate reading it. Therefore, the Court recommends finding that a genuine issue of material fact

---

[4] The record relied on by the Court is that multiple prison medical personnel have observed and noted Plaintiff's limitations (Dr. Creany, Dr. Beercroft, Dr. Wermers, and Renee Martinez) (*see* Facts, *supra* pp. 9-16); three CDOC Progress Assessment Summaries of Plaintiff state that "[d]ue to his documented physical imitations specifically with his dexterity, he has been allowed use of Audio books" ([#268] at 33, 35, 37); a CDOC nurse informed Plaintiff that "there was a lot of documentation in [his] records to substantiate the talking books (*id.* at 19); and the CTBL administrator stated that Plaintiff has submitted "copies of his previously approved CTBL applications, most recently signed off by Dr. Wermers at AVCF" (*id.* at 41).

exists as to whether Plaintiff's physical impairment substantially limits his ability to read.[5]

The two remaining elements of an ADA claim contemplate whether Plaintiff was excluded from participation in or denied the benefits of CDOC's services, programs, or activities, and whether such exclusion, denial of benefits, or discrimination was by reason of a disability.  These elements rely first on a finding that Plaintiff is indeed a qualified individual with a disability.  *See* 42 U.S.C. § 12132; *Nasious*, 2011 WL 2601015 at *2.  As stated above, due to the existence of an unresolvable fact issue about whether Plaintiff's impairment substantially limits the major life activity of reading, summary judgment is not appropriate as to the first element.

Even if the Court could, at this stage, conclude that Plaintiff is a qualified individual with a disability pursuant to Title II of the ADA, the record before the Court is inadequate for an adjudication of the remaining two elements of Plaintiff's ADA claim.  It is apparent from the record that Plaintiff has been excluded from participation in CDOC's CTBL program, but the purpose of the CTBL program is unclear.  The record does not indicate whether the CTBL program is intended to be a reasonable accommodation to disabled inmates for library services,[6] or whether it is intended to allow disabled inmates to read in

---

[5]  In order to meet the test for a "qualified individual with a disability," the finder of fact must also determine that the "individual with a disability . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  Thus, two issues remain to be decided as to Plaintiff's assertion that he is a qualified individual with a disability: 1) whether Plaintiff's physical impairment substantially limits his ability to read, thus establishing that Plaintiff is disabled within the meaning and purpose of the ADA; and 2) if so, whether Plaintiff's disability meets the eligibility requirements for participation in the CTBL.

[6]  The use of a library in a state prison is an activity within the meaning and purpose of Title II of the ADA.  *E.g., Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997), *abrogated on other grounds by Erickson v. Bd. of Governors of State Colleges*, 207 F.3d 945 (7th Cir. 2000).

their cells like non-disabled inmates, or whether it is simply a program available to eligible inmates regardless of the CDOC's responsibilities under the ADA (or for another purpose altogether).[7]  In light of a genuine issue of material fact as to whether Plaintiff is a qualified individual with a disability, in addition to an inadequate record regarding the purpose of the CTBL program in terms of Defendants' ADA obligations, the Court recommends denying the cross Motions as to Plaintiff's ADA claims.

**B.    Conspiracy**

Plaintiff alleges that Defendants conspired to violate his statutory rights by taking away his CTBL materials.  *See* [#37] at 6, 7.  The Tenth Circuit has held that "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under the color of state law" is actionable.  *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).  However, in order to succeed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."  *Id.*  Further, "[w]hile a deprivation of a constitutional right is essential to proceed under a § 1983 claim, proof of an agreement to deprive will often require examination of conduct occurring prior to the deprivation."  *Id.* at 701-02.  To

---

[7]  The purpose of the CTBL is relevant to this analysis because, should the jury find that Plaintiff is a qualified individual with a disability, and should the record reflect that the CTBL program is intended as a reasonable accommodation for disabled inmates (for example, to facilitate disabled inmates' ability to read in their cells, to the same extent that non-disabled inmates are permitted to do so), Defendants' exclusion of Plaintiff from the CTBL could violate the ADA's mandate of meaningful access to activities and services provided by the facility.  *See, e.g., Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1241 (D. Colo. 2009) (finding that the plaintiff properly pled "a claim under the ADA for discriminatory exclusion from generally available medical services offered by the State defendants."); *Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1195 (D. Kan. 2000) (finding that the plaintiff, who was deaf and mute, had meaningful access to a telephone with a telecommunications device for the deaf ("TDD"), because the defendants allowed plaintiff "at least two 30-minute calls per week" as a reasonable accommodation, even though such access was less than that offered to all inmates generally).

establish the existence of a conspiracy, a plaintiff seeking redress must show that there was a "single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Id.* (internal citations omitted).

Plaintiff's assertion of a conspiracy amongst the named defendants arises from a letter authored by Defendant Campbell dated March 23, 2009. Although it is apparent from the Statement of Undisputed Facts that Defendants communicated with each other regarding Plaintiff's participation in the CTBL program, nothing in the record indicates that the communications were conducted with the purpose of anything other than following the *Montez* Special Master's amended final order, which concluded that Plaintiff was not disabled pursuant to the *Montez* criteria. Plaintiff must show that there was an agreement and concerted action among the Defendants to prove his conspiracy claim. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Here, there is no indication of agreement or concerted action; the communications simply demonstrate that Defendant Campbell, after the appeal of the Special Master's initial final order had been submitted, directed Defendant Steinbeck to remove the CTBL materials from Plaintiff's cell, and upon receipt of Plaintiff's CTBL application in January 2009, asked Defendant Dr. Aasen to conduct a review of Plaintiff's medical records for the purpose of verifying the application. *See* Campbell Aff., [#236-3]; Aasen Aff., [#236-5]; Steinbeck Aff., [#236-9].

"Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989). In the absence of evidence indicating agreement and concerted action among the Defendants, the Court recommends finding that no genuine issue of material fact exists as to Plaintiff's conspiracy claim, and judgment should be entered in favor of Defendants as to this claim.

24

C.    **First Amendment Free Exercise of Religion**

In his third claim, Plaintiff contends that Defendants denied him the right to freely exercise his religion by removing the CTBL materials and books on tape from his cell.  *See* [#37] at 8.  The books on tape included a Jewish Tanakh and daily prayers.  *Id.*

The First Amendment precludes government action prohibiting the free exercise of religion.  U.S. Const. amend. I.  Plaintiff must satisfy a two-step inquiry to demonstrate a colorable free exercise claim.   First, Plaintiff must "show that a prison regulation substantially burdened ... sincerely-held religious beliefs."  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).  Plaintiff must establish that his beliefs are religious in nature, and are sincerely held.  *See id.* (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997)).  The burden then shifts to Defendants to identify "the legitimate penological interests that justif[ied] the impinging conduct."  *Boles*, 486 F.3d at 1182.

The sincerity of Plaintiff's religious beliefs is not in question.  Instead, Defendants assert that precluding Plaintiff from participating in the CTBL program does not burden the exercise of Plaintiff's religion.  *See* [#236] at 16.  Defendants claim that "the state is not required to take affirmative steps to accommodate a prisoner's free exercise of religion." *Id.* (citation omitted).  Plaintiff's only response is that "Defendant Steinbeck was sent to confiscate all religious material that was on tape."  [#268] at 4.

"Demands for affirmative governmental assistance are generally disfavored in free exercise cases."  *United States v. Friday*, 525 F.3d 938, 957 (10th Cir. 2008) (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988) ("The crucial word in the constitutional text is 'prohibit': 'For the Free Exercise Clause is written in terms of what

25

the government cannot do to the individual, not in terms of what the individual can exact from the government.'")).  Here, there is no conduct impinging on Plaintiff's exercise of his religion.  Pursuant to the evidence proffered by Defendants, Defendant Steinbeck was instructed to remove *all* CTBL equipment from Plaintiff's cell, not only the religious materials.  *See* Steinbeck Aff., [#236-9] at 2.  Nothing in the record indicates that Plaintiff has been prohibited from freely exercising his religion; Defendants simply are not facilitating Plaintiff's religious practice by permitting him to maintain an audio book player in his cell.  Plaintiff is still free to use audio book players in the library, and presumably may keep religious texts in his cell.  *See* Campbell Aff., [#236-3] at ¶¶ 22-23.  Therefore, the Court recommends finding that no genuine issue of material fact exists as to Plaintiff's third claim asserting a violation of his First Amendment right to freely exercise his religion, and judgment should enter in favor of Defendants as to this claim.

### V.  Plaintiff's Motion for Leave to Amend

Plaintiff filed a "Request to Ammend [sic] Complaint" on February 27, 2012 [#279] ("Motion").  As instructed, Plaintiff included a proposed Second Amended Complaint with his Motion.  *See* [#279-1].  Plaintiff seeks to add Dr. Teona, Debbi Macleod, and "parties unknown" as defendants to this action.  [#279] at 1.  Plaintiff's stated purpose in adding the proposed additional defendants is to show that approval of his participation on the CTBL program was improperly rescinded as retaliation, at the instruction of "administration."  *See* [#279].  Plaintiff further requests to add "mental disability" to his claims.  *Id.*

Defendants oppose Plaintiff's Motion, on the bases of untimeliness, prejudice, and futility, because Plaintiff has not yet exhausted administrative remedies as to Dr. Teona and Ms. Macleod.  *See Resp.*, [#281].

In Reply, Plaintiff contends that he should be given leave to amend pursuant to Fed. R. Civ. P. 15(d), which provides for supplemental pleadings. [#283]. Plaintiff suggests that his proposed amendments do not raise factual issues. *Id.* at 3. Plaintiff asserts that he exhausted administrative remedies, and in any event, the CDOC has "no working griev. process." *Id.* at 6.

The Court finds Defendants' position more persuasive. Pursuant to Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading . . . ." This matter has been pending for three years. Permitting the addition of two defendants would indeed prejudice Defendants; the new defendants would have to be served and would each have to answer or otherwise respond to the operative pleading. Such delay after the briefing and recommendation on the motions for summary judgment does not constitute "just terms." *Cf. Nicholls v. Zurich Amer. Ins. Group*, 244 F. Supp. 2d 1144, 1153 (D. Colo. 2003) (denying leave to amend based on prejudice, because the motion for leave was filed after the close of discovery and filing of motions for summary judgment). Furthermore, allowing the amendment would not alter the above-stated Recommendation on Plaintiff's claims, and would have minimal, if any, effect on the relief sought by Plaintiff, as the purpose of the proposed additional defendants is apparently either to simply bolster the claims already presented or to assert a retaliation claim seeking the same relief.

In any event, the Court agrees that amendment would be futile. Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before submitting the proposed amendments. The PLRA provides as follows:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).   The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002).   "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

"An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).   Defendants provide an affidavit of Anthony DeCesaro, the grievance officer for the CDOC, attesting that Plaintiff did not exhaust administrative remedies because he did not file a Step 3 grievance regarding the proposed amendments in February 2012. *See* [#281-1].   Plaintiff presents no evidence to the contrary.   The Court thus concludes that Plaintiff has not completed the grievance process as to the proposed amendments, thus Plaintiff has not exhausted administrative remedies as required by the PLRA.   For these reasons, the Court finds that Plaintiff's Motion is untimely, prejudicial, and futile, and should be denied.

## VI.  Conclusion

Accordingly, the Court respectfully **RECOMMENDS** that **Defendants' Motion for Summary Judgment** [#236] be **GRANTED IN PART** and **DENIED IN PART**, and

**Plaintiff's Motion for Summary Judgement** [sic] [#245] be **DENIED**;

IT IS FURTHER **RECOMMENDED** that summary judgment enter in favor of Defendants on the portion of Plaintiff's Claims One and Two asserting a conspiracy claim, and on Claim Three asserting a free exercise claim;

IT IS FURTHER **RECOMMENDED** that summary judgment be denied on the portions of Plaintiff's Claims One and Two brought pursuant to the ADA; and

IT IS FURTHER **RECOMMENDED** that Plaintiff's "Request to Ammend [sic] Complaint" [#279] be **DENIED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

IT IS FURTHER **ORDERED** that a Final Pretrial Conference is set for **July 10, 2012**, at **10:30 a.m.** in Courtroom C-204, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.  Plaintiff and his case manager shall

contact the Court at (303) 335-2770 on the above date and time in order to participate.

IT IS FURTHER **ORDERED** that the proposed pretrial order shall be submitted on or before **July 5, 2012**.  The proposed pretrial order to be submitted to the Magistrate Judge under the ECF Procedures may be submitted in WordPerfect or pdf format and shall be emailed to the Magistrate Judge at *Mix_Chambers@cod.uscourts.gov*.

Attorneys and/or pro se parties not participating in ECF shall submit their proposed pretrial order on paper to the Clerk's Office.  However, if any party in this case is participating in ECF, it is the responsibility of that party to submit the proposed pretrial order pursuant to the District of Colorado ECF Procedures.

**The parties shall prepare the proposed pretrial order in accordance with the attached form.**

IT IS FURTHER **ORDERED** that the Clerk's Office shall electronically mail a copy of this Minute Order to the legal assistant for the Department of Corrections at the following address: service_of_process@doc.state.co.us. and shall mail a courtesy copy to the case manager for Plaintiff at his facility.

IT IS FURTHER **ORDERED** that the Clerk of Court is directed to include this matter on the list of *pro se* cases available for volunteer counsel, in consideration of the remaining claims.  However, the Court warns Plaintiff that **placement on the list frequently does not result in counsel being obtained**.  If an attorney does not volunteer to represent Plaintiff, Plaintiff is warned that he must comply with the scheduled Court dates and Court orders.

Dated:  May 14, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

30